We'll hear the next cases in Stallworth and Nnebe. May it please the court, my name is David Goldberg, I represent plaintiff appellants in these cases. This is a civil rights case, your honors, about the process by which defendants deprive New York City taxi drivers of their licenses and their livelihoods. There's no shortage of remarkable things about the case and the procedural history of the case, not least that it took a seven-year remand for us to establish the facts that were alleged in our 2006 complaint and facts that Judge Sullivan in 2009 took to be undisputed. Those findings, which the city now urges the court to embrace, belie the multiple representations recorded in this court's 2011 opinion and repeated and elaborated upon in the district court on remand, including in sworn testimony. The facts establish that a driver's arrest on a charge that's on the TLC list, Judge Sullivan found, is treated as per se proof that his reinstatement poses an ongoing substantial public danger, exactly the opposite of what they represented in this court. May I ask a procedural question? Neither of these cases has ever, neither Niebe nor Stolworth, has been certified as a class action, is that right? That's right. And the Niebe case went to trial. Right. But it went to a particular kind of trial, your honor. This is a very procedurally odd case because of the remand. We wanted to have a complete trial on all of the issues, and Judge Sullivan's position was that there should be a trial, the way this should proceed is on the facts of what the city did. That was his interpretation of the remand. And at that... How the city handled these matters. Right. And he said this is not a full trial. That's where the jury trial issue came up because we reserved our jury trial right for everything after for the legal and constitutional questions. But this was, so it's kind of an odd hybrid case is what I would say, your honor. But in Stolworth's case, it's pretty straightforward because the case was dismissed before the judge had any opportunity. But sort of on consent, so you have, but your position is you have not abandoned in any way the class allegations here? We have not abandoned. I think everybody, to the contrary, has treated it as a class action. And obviously it still would need to be certified, but there's an organizational plaintiff in the case, New York Taxi Workers Alliance, that is in there all the way through so that all of the issues are live and members of, almost everybody is a member of both classes and all of that. So... And there is a, but there is a shifting body of regulatory law here. Is there not? Well, your honor, I think, I think you're asking whether the standard, the language of the rule has changed and it has, but I think, again, everybody agrees that the practice... Well, everybody may agree it, but... Or Judge Sullivan found. But it seems to me your argument in 2006 was essentially that there was a denial of procedural due process because the rule that was in place referred to, gave the authority to suspend licenses in an emergency. And I thought the argument was that the city discounted any evidence that there was no individual, save for the nature of the charge and that that meant that the hearing was kind of a sham and did not really fairly address the question that the regulation posed. Am I wrong in that understanding? I'll just say, your honor, that the claim has been the same, that these hearings are a sham. Well, the claim may be the same, but I'm trying to understand what the claim is and was. My understanding is that the reason that the hearing was alleged to be a sham in 2006 is that the standard in the regulation made no reference to automatic suspensions for arrests. It said, it set a standard when there is some emergency reason to deal with, to suspend a license because of a threat to safety. And that standard was not fairly applied because there was a singular factor unannounced to anyone that was used to regulate the hearings and relevant evidence, evidence relevant to the standard was disregarded. Is that not why this is an unfair hearing? Is that not what makes it a sham? That, your honor, is not what makes it a sham. I would say two things that haven't changed the entire time through. It has always been a fact of arrest hearing and nothing more. And the issue has always been, could they have a hearing that gave drivers an opportunity to establish through individual evidence that they don't pose a direct insubstantial threat? Doesn't it matter what the rule is? In other words, if the rule says you shall be suspended if there is an emergency threat, then we have one kind of situation when there is a secret sub rule or practice on the part of the commission of suspending people whenever they're arrested and not considering facts that are relevant to the standard that could be taken into account, could be a part of the hearing. That's one situation. That's one situation, your honor. But I would say two things about that. The first thing is, it has always been the vice of this rule is that they've always disregarded evidence that is probative. It's a one-sided hearing where they only look at that. And when you say that's always been the claim in 2014, the standard is amended. There's a substantive regulation now that says whenever anyone is arrested, they can be, for certain specified offenses, they can be suspended. Now so where is the procedural problem with limiting a hearing about whether that regulation is in play to whether or not there has been such a charge? Because that regulation, your honor, we believe if you start with the 2011 opinion, what makes this a procedural due process case all the way through is that there is a deprivation of property. And when you have a deprivation of property, the question then is what process is due? And the answer comes from Matthews v. Eldridge. And that's true in every single kind of case. I understand that. So suppose the cab driver is convicted of one of these offenses at the end of a felony, of a manslaughter or something. And would it be impermissible for the Taxi and Limousine Commission to say anyone who is convicted of a crime of violence loses his license? Would that be an impermissible regulation? I think it might well be, but this is it. And why would that not be a substantive due process or some other kind of substantive issue? The procedural issue is pretty simple. The regulation says you lose your license if you commit a certain crime. The question is, did you commit a certain crime? Your Honor, I think if we look at procedural due process case law, there are lots of cases where the standard is what is struck down. In Valmonte v. Bain, the standard was, is there some credible evidence that you've been reported for child abuse? And the reason this Court said that was inadequate was because it was a deprivation of property, because the risk of error was high, and because there was an alternative way that would produce fairer and more accurate results for property owners. And the reason we do that, the reason there is a Matthews test, is because the Court has said that people have a strong respect, the government, for what belongs to a person. And when you deprive somebody of property, deprivations of property are distinct in the constitutional tradition. Well, actually, though, if someone is convicted of one of these crimes, they've had lots of time and process to decide whether they committed the crime, and then their liberty can be taken away, as can their property by fines. Right. So, Your Honor, where is the insufficiency of process if there is a regulatory body that says we won't license people who have committed, been found to have committed those crimes? So obviously we're talking about found to have been committed. And it's a different case. It's in your case is the case under the regulation. The regulation says whether the charges underlying the licensee's arrest, it doesn't talk about convictions. Right. So the very important point is this, is that in the Crimstock case and the James Daniel Goode case, both the Supreme Court and this Court talked about provisional deprivations. And there's a provisional deprivations are distinct because when somebody, the government's claim is not that this no longer belongs to you. The claim is this might not belong to you. And the standard here for whether they take this thing in the interim, because we know that everybody is arrested, they're suspended, and then everybody, almost everybody is reinstated. And the entire focus of the inquiry is, are they a danger during that period of time? And that's, and they haven't been convicted of anything. And so the government, the city gets this extraordinary bump, they get this, there's a lot of error introduced into the process by treating an arrest as if it's a conviction and as if it establishes danger. I thought also that your point was that, or a point was flowing from Judge Hall's opinion from several years ago that the commission had indicated that it had allowed drivers to introduce factual evidence about the circumstances of their arrests or characters about their backgrounds and that you're saying now that, in fact, they don't allow that. Right. I think that's unarguable. And they doubled and tripled down in the district court. The now chair of the agency testified under oath that she considered all of the factors, Judge Sullivan came up with a whole list of categories of evidence that might establish or bear on whether somebody was dangerous or not, whether they received a DAT, whether they had a clean record, all of those things, whether it was on-duty or off-duty, which is extraordinarily important. She said, yes, I consider all of that. They turned out, as he found, they don't consider any. And then he said, as a matter of procedural due process, the standard has constricted. And if they claim that there's a nexus test, but if they came back and said, it's not nexus, it's just arrest, then the procedural due process rights would be constricted even more, Your Honor. Why isn't the district court's interpretation of the language, why is it unreasonable? The language says, whether the charges underlying a licensee's arrest, if true, demonstrate that the continuation of the license while awaiting a decision on the criminal charges would pose a direct and substantial threat to public health or safety. If you look at the way it's written, the focus is on the charges themselves, right? It looks like my time has elapsed. No, no, please continue. The first answer to that is, I don't think that's the best or only reading of the rule. Obviously, their chair and they, at various points, represented the exact opposite. But the critical thing is, the issue to be determined is, does the driver's licensure during this particular period of time pose a direct and substantial threat? So it's an entirely forward-looking, individualized process. Does your license, it's an individualized evidentiary hearing. They're encouraged to bring every single thing. And let's say the rule said very clearly... Where in the real-world context, you would say that the charges do not reflect whether someone could be viewed as posing a substantial threat to public health or safety. Well, obviously, there are ALJ opinions in this case where judges, again, have assumed guilt, which is an extraordinary thing. And then they said, but even if you assume guilt, this person, because it was off-duty, because it was aberrational, as a matter of fact, they reinstate almost everybody. And that... What is it, about 75%? Well, at least 75%, different categories. I mean, I think DUIs tend to be convicted and revoked at a higher rate. But so it's even higher than that. But it's a very high... And that's because people don't pose this... Past conduct and future dangerousness are two entirely different categories. If you look at Salerno, they said, we're going to look at very serious crimes, and then we're going to apply a test for whether you're a danger. And so what we have here is a rule of evidence, essentially, where they're saying, we're going to treat this one side, which is an arrest, as conclusive proof that you, your driving, would pose a direct and substantial danger to passengers. And this is... The only thing that's happened is that an officer has said, there's probable cause to arrest. Often, it's almost always misdemeanors, often outside his presence, a DAT is given. He's not finding danger in the moment. And they're taking somebody, depriving the property for three, four, five months with no opportunity whatsoever. And when the person brings in evidence that says, even if it's true, even if I did what they say, and then a neutral adjudicator concludes that they, in fact, would not pose a danger, even if it's true, then they just throw it away anyway and say, all we can think about is the arrest. And so it's a rule of evidence, and it's a quintessential procedural due process violation. In the Hamdi case, which is about terrorism, the United States came in and said, we, our standard, our substantive standard is, is there some evidence to believe that there was a, that this person is an enemy combatant? And the Supreme Court didn't say, well, that's the substantive standard, and so there's nothing for you to say. They said, that's not the tradition. If we're trying to determine some effect like that, we're going to hear from both sides. And that's obviously in an extraordinary context where, and there are more mundane cases, Connecticut versus Doar, Valmonte versus Bain, where the standard is codified so clearly, and they, and the court says, that's a violation of due process, because what the Supreme Court has said time and time again is that the process you give is not, doesn't define the process due. Your adversary suggests, as I understand it, that if we do what you are suggesting, that that would create procedural difficulties in ongoing criminal cases. Well, what's your response? Again, I think the very best response, Your Honor, is what they do and what they said they do, because the record here shows that they, what they do is provide a modified version of these hearings, right? The second, the opinion from 2011 said, we're not going to have many trials because, and that's a totally valid Matthews concern, the government interest in Matthews is considered and is given great weight, including the feasibility and cost of doing so. These are not going to be perfect hearings. There's going to be a lot of error buttons. Are you saying that you are not asking for a hearing at which one of the issues will be, did he do it? Well, can I, I can give you two answers to that, Your Honor. I think there's only one answer to this. We're asking for it, but we, what I would say is the constitutional violation is established irrespective of whether you agree with that. I understand that there are other issues that you are asking to be able to raise, like this was off duty, this was a minor kind of thing, assuming even that the driver did this offense, still, there are very important and very significant reasons demonstrating that he's not a safety threat. What I am asking you is, are you also saying that it is a violation of due process not to permit the driver to argue that he is factually innocent of the crime? Is that part of your case or is it not? Because if it's not part of your case, the question about screwing up the criminal case for either the defendant or the prosecutor, it seems to me, drops out of the issue. Right. So, Your Honor, again, what I can tell you is we believe that there's, that it's not an all or nothing, you can't have a mini trial, they can't compel witnesses, there are lots of reasons why, but the Crimstock hearings are not mini trials, and I think that's why I think that's a remedial question. I guess I had a simple question, I still don't know the answer to it, which is, are you saying that one of the things that the commissioner must be required to consider is whether there is evidence on the part of the driver that he's not in fact guilty of the thing charged? Is that part of this hearing or is it not part of this hearing that you are asking for? I think it should be part of the hearing, but it, because it's clearly relevant evidence, but there are legitimate and valid reasons why it can't be a typical... Well, if there are legitimate and valid reasons, are you still saying that those legitimate and valid reasons are outweighed by the plaintiff's interest such that you are saying that not withstanding those legitimate and valid reasons, you think that the driver should be allowed to raise this issue? Or when you say there are legitimate and valid reasons, are you saying, yes, that would be theoretically ideally a question going to safety, but when you do the due process balancing, we're not asking for that? That's what I'm trying to find out. What is your position? I don't mean to be at all difficult, Your Honor. I think in Crimstock, the court said some things will have to happen at the district court level. Things only have to happen at the district court level if you are raising the issue. And the question is, are you? If you are, fine. Maybe then that will have to be raised at the district court level. Maybe that will have to be figured out. I just want to know if that's part of your argument or not. I don't think that's in any way the core of our argument. I know it's not the core of your argument. I'm asking, is it part of your argument, or can we set that to one side? That's what I'm trying to find out. I'm sorry, Your Honor. It is part of our argument. Okay. That was a yes. I'm sorry about that. I asked about five minutes ago. I'm very sorry, Your Honor. I think, as I said, the main procedural due process claim here is they're providing a hearing and they're hearing from one side with evidence that is, you know, in the risk of erroneous deprivation in these cases, it's truly enormous. And the personal burden, in the first opinion, the 2011 opinion, the court said 10 days without earning a living is an extraordinary burden. For these people who are hardworking immigrants, almost none of whom have any criminal history whatsoever because they've been licensed as taxi drivers, they pass the test. And almost everyone is going to be reinstated, and almost everyone knows they're going to be reinstated. And then they have this elaborate process where they lead them around, they encourage them to bring in all of the evidence. Then you have an ALJ who considers all the evidence, who makes a fair determination, albeit one that already has a very large risk of error because it's both assuming guilt and then assuming danger from guilt, which is really a very counterfactual assumption because there's no record whatsoever of drivers assaulting passengers. It's an extraordinary, unusual event. Again, they're sitting, they're being tracked by GPS, they have a, their picture, their fingerprints, everyone knows who they are, where they are at all times, and they're facing criminal charges. It doesn't happen. And so you wind up, and so they're saying, and then the judge, a neutral fact finder in their process, makes a determination, this person, so there's no argument that they can't do that. They can do that, and that's very different. In the typical Matthews case, that is the critical factor on the government's side. The government says, we can't possibly do what you're asking to do. So in the vast, so what we're asking is that, they can't say that, not only because they do it, because the chair, the chair designee said, this is what I do. We have your argument. Thank you.  Thank you, Your Honor. May it please the Court, Claude Platton on behalf of the Appellees. Can I ask you something, Mr. Platton, at the outset that confuses me a little bit, and if you could help me out of my confusion, it would be much appreciated. As I, as I read the history of this litigation, it seems to me that the Commission argued consistently that drivers can introduce factual evidence about the circumstances of their arrests, or character evidence about their backgrounds, and that the Commission has also said that such evidence could permit a suspension to be lifted under, under the regulation. Now the District Court reads the regulation in a different way, and it seems to me that you're arguing the opposite of, or inconsistently, as to what you had been argued through 90 percent of this litigation. Help me out of my confusion. Right. Well, so I have to disagree, Your Honor, about the position we've taken before. I start out by acknowledging with regret that we created confusion in the last appeal about what the standard was, but going back and trying to reconstruct how we got to this point, I think looking at our brief to the Court in the last appeal, we did present the standard the way we're presenting it now, the way Judge Sullivan found it to be. At the oral argument, we made, our attorney made statements about the use of the criminal complaint that I think she intended to be narrow, but that created the impression that we were backtracking and suggesting that a broader standard would apply. In part, it's also looking at the, the 2011 decision written by Judge Hall. Right. I mean, the confusion, if there's confusion, it, it, it, it goes back to the way I understood the UW, not you personally, but the way the argument was, was presented to the Court of Appeals as to what actually happens. And what I understood that opinion to be saying is, look, you're saying that some factual evidence can be introduced. Maybe there's something that can be done short of a mini trial, educate us as to what's going on. Well, so as I said, I think what our, I listened to the, the oral argument and what our attorney was saying was she, in her view, the criminal complaint could be used to try to clarify the nature of the charges when you're doing the nexus inquiry. So, and so she wasn't suggesting that there was going to be a factual determination about dangerousness or individualized determination in each case, but that something more than the, the name of the charge, but also the complaint could be used. A few of the witnesses at the trial subsequently suggested hypothetically that they would do that, but Judge Sullivan didn't credit that testimony because he found that that had never actually happened. So I, I think we created a misimpression with our statements, but it was never intended to change the consistent story that we've had account of the rule, which is that it, it is about the nature of the charges. And Judge Sullivan made a finding that that has always been the standard that the TLC applied. But how come summary judgment wasn't appropriate back in 2011? On remand from the court? In other words, why did we remand? If the, if, if the argument you're making now is correct, then summary judgment for the city was appropriate then? Well, again, I think we're, and I acknowledge it's our responsibility that we at the argument led the court into thinking that we were changing, we were just giving a different description of the rule than we'd given up to that point. So I think if we had been clearer, perhaps the outcome of the prior appeal would have been different. Well, but was there a motion for reconsideration that said, oh no, no, you misunderstand us. We're not saying there should be a remand at which it will be relevant to decide whether this is a, this is treated as conclusive or not. We're saying it's not relevant whether this is, it's not a material fact because even assuming, and indeed it is what we say is the case, that this is a conclusive rule that requires disqualification or suspension of the license, we win. Right. So please, please don't send it back for a useless remand. I agree. I agree there could have been such a motion. I don't know why we didn't make one. Certainly we didn't benefit in any way from the protracted litigation and certainly no one did and I regret it, but Judge Sullivan made findings on remand. Going back to the 2006, the people who are the original plaintiffs in 2006, they were all, had their licenses suspended under a regulation that made no reference to the charges if true and what the significance of the charges if true would be. They were suspended under a rule that did not, like the present rule, purport to give, to mandate suspension. They were suspended under a rule that simply said that if there is an emergency, let me get the exact language, that if the chairperson finds that emergency action is required to ensure public health, safety, and welfare, he, she may order the summary suspension of a license pending revocation proceedings. That was the standard. Was it not until 2006? That was the rule, Your Honor, but the... But then they have, and then it says later, but there can be, there'll be entitled to a post suspension, a post immediate suspension hearing and any normal person would think that what the hearing is about is whether emergency action is required and indeed Judge Sullivan found that there was a violation of fair notice because that wasn't what the hearing was going to be about. Indeed, there is evidence in the record that when an ALJ treated that as the standard and heard evidence and said, no, this person doesn't present a threat, the agency interfered with the independence of the ALJ and told them we're going to banish you to Long Island City if you don't stop making recommendations like this. Now, it seems to me that's not just a question of not giving notice of what the standard is going to be, that's giving a hearing that's a sham with respect to the only thing that the regulation says is relevant. Well, I disagree, Judge Lynch. I agree with you that there's an issue, that Judge Sullivan found there was an issue of notice under the prior rule and that I think is the right way to think about that question. What Judge Sullivan found was that the rule as applied in those hearings was always the same. The rule is applied in the proceedings. So the codification of the rule, the standard in 2006 was intended to clarify the practices that had always been applied in the hearings and as applied by the commissioner in the commissioner decision. So in my question to my adversary, you described it as a secret rule. I agree it wasn't in the rule at the time, but it was articulated in the TLC commissioner decisions that reviewed the ALJ recommendations. So it was not secret. I mean, as a question of notice, we have a question there, as Judge Sullivan concluded, it's closer, but not as a matter of the substantive standard, which is always the same. As to the fair hearing, if there is, I mean, there's a rule. It's made as a part of a government regulation by a regulatory body. It says, this is when your license can be suspended and you have a right to a hearing about whether this is so. And then in fact, evidence that any reasonable person I think would consider at least relevant to the question turns out not to be relevant at all because it's not, it's not regarded. How is that a fair hearing on whether this regulation is satisfied or not? Isn't that why this court remanded to find out whether the allegations of the plaintiffs were really true or not, because we thought it was relevant to whether there's procedural due process, whether you actually apply the rule that you say you are applying or you don't. Isn't that what the due process issue was in that case that was before this court? And you guys said, oh, no, no, we do consider these things. And we said, okay, fine, then I guess in that case, there's not really a summary judgment case. We have to find out whether you do or you don't. And it turned out you were wrong in what you told this court, you don't or didn't at that time. A few things I need to say in response. So one, again, it is the right way to think about the question of the rule as written versus the rule as applied is notice. The rule as applied was consistently applied. It wasn't a sham because the agency always considered the facts that were relevant under the standard that it was applying. So I agree that there's a notice issue before the revision of the rule in 2006, but it doesn't render procedurally that that hearing is sham because the rule was consistently applied and there was always a meaningful opportunity to be heard as to the issues that were relevant under the standard as applied. I want to... How do you know what you can say or not say if it's so general? If the chairperson finds that the emergency action is required to ensure public health, safety, or welfare, doesn't tell the cab driver really anything about what in specific he needs to be able to show. Right. So this... Right. So two... You're saying that's a notice issue. It's a notice issue. It's not just a notice issue. It's an understanding of how the statute is applied. I mean, you're saying it was applied or the regulation was applied consistently, but what does it mean to say something is applied consistently when there is no clearly articulated basis for the application of a regulation? Well, I think the reason it's a notice issue is that there's a question whether the drivers would be equipped based on the notice. I'd be happy to address that point, but get to this first. The drivers would be equipped to come into the hearing and present a defense. So it's a notice question as to how clear the rule was. But again, this is the point about the secret rule. There was never a secret as to what the standard as the TLC understood it. There were written decisions, and Judge Sullivan found that the TLC always applied a standard that was focused on the... That in determining the threat to public safety under the old rule, the TLC was looking to the nature of the charges, the fact that the charges had been brought, they remained pending, and that there was a nexus to public safety, and that never changed. And it wasn't done in secret. There was a decision at the end of that process. So there's a notice question. I think that arguably the notices did lay out the predicates even before it referenced the new standard, laid out that the suspension was based on arrest, that the suspension was being made in the interest of public safety, that the suspension would be lifted if the charges were dropped or reduced, which put the drivers on notice that that was an important question that they could bring up at the hearing. It becomes an easier question, I think, on notice, as Judge Sullivan found, once the standard at the hearing shall be. But up to your point, I think this is a notice question, and it's harder for us, as Judge Sullivan concluded, before the change in the rule, but the standard was consistently applied and there was an opportunity to be heard on the points that mattered under that standard. And just briefly I want to address the point about the ALJ who was chastised for misapplying the rule. As I understand the record and the testimony, the concern was not that they were trying to bias the outcome of the proceedings, but that he was being reprimanded for having departed from the standard that the ALJs understood they should apply, which is the nature of the charges, and not to make an individualized determination about likely guilt or about in danger apart from guilt. And that he was being reminded not to go and stray into factors that weren't relevant under the standard. You do have, though, testimony, right, from various commission chair people that the commission already does consider individualized evidence. Now, I understand that the district court found the testimony not to be credible, but the testimony does suggest that at least the leaders of the commission don't think it's And the court, district court also found, and correct me if I'm wrong, that some ALJs have been considering this sort of individualized evidence. So why is it unworkable? So right. We're sort of living with Judge Sullivan's findings. I don't know exactly the basis for the statements. Well, I think, no, because I think that what Judge Sullivan was relying on is the fact that these were hypothetical statements about what the agency might do. But Judge Sullivan was interested, I think rightly after the remand, in what actually the practice of the agency is. So many of the witnesses testified, the ones who had the most experience in doing this and the longest track record, that this had always been the agency standard. Commissioner Dawes, ALJ Coyne, who was the supervisor of the ALJs, there are numerous witnesses who said this is the standard. And several other witnesses suggested that they might consider it something else. And Judge Sullivan discredited their testimony. So I don't think it was clearly erroneous for him to do that. Wait a minute. The city's lawyer, forget the lying witnesses that Judge Sullivan said he was dealing with, in summation, the court. But the inquiry is really just about the charges. It's just about whether the statute that is alleged to have been violated is serious and has a nexus to public safety, right? Defense. This is counsel for the city. That is certainly the bulk of it, yes, but the witnesses testified that the individual circumstances are always considered and must be considered. This is not just something that was said accidentally, misspeaking to this court in 2011. This is what witnesses testified to under oath, and this is what the city argued to Judge Sullivan he should find based on that testimony. Yes or no? I misrepresent anything that's in the record? I suspect that you're accurately quoting that, Your Honor. I don't dispute that. You probably should know. And that goes to my first question, the source of my confusion. The twists and turns of your litigation posture. It seems that once Judge Sullivan ruled, now you've changed completely your posture. I don't mean you personally. No. Well, for one thing, we all think that the findings of fact made by Judge Sullivan are clearly erroneous, and so we're litigating this case on the basis of those findings. Some of the witnesses, the witnesses for the TLC did not speak with one voice, but the testimony was clear about what the actual practice of the agency is, and the conflicting statements had to do with comments about what other witnesses thought might be possible and what isn't, but Judge Sullivan focused on what actually . . . on the entire life of this case and before has been the practice, the standard as applied in reality, and it was not clearly erroneous for him to make those findings. So to the question . . . No, no, no. I'm still trying to think about this in terms of the real world. Seventy-five percent, and correct me if I'm misunderstanding, seventy-five percent of suspended drivers get their licenses back. Correct? Right. And then on average, it's about 136 days that someone is in suspension, correct? Correct. I think . . . And is there any compensation, any way that somebody during those 136 days can get recompensed? No, there's not. So you had asked earlier about the reasons for this rule, and I think these questions are going to that as well. The rule reflects the difficulty of ensuring the safety of taxi passengers and other members of the public when you're talking about an agency that licenses about 170,000 drivers – that's the current number – that because of the nature of the interaction that takes place in a cab on the road, the agency has no ability to supervise what happens to . . . how those interactions take place, and so the agency relies on licensure as the way to protect the public and make sure that drivers don't pose a danger. So there's stringent requirements at the outset to get a taxi license, and then there is a suspension rule that says if you've been arrested and been charged with a crime that poses – we think poses a threat to public safety, a crime of violence, sexual misconduct, or violation while driving, or a felony, then the license will be suspended until the criminal justice system resolves what's going on with those charges. So . . . What the criminal justice system resolves is only, I suppose, that there has not been proof beyond a reasonable doubt of the violation. If you are so concerned about each and every one of these misdemeanors, there may still be proof by a preponderance that would allow you to lift somebody's license, and yet no one ever does. If the charges are dropped because of the vagaries of speedy trial rules or because of some suppression of evidence that might not apply in an administrative hearing, or someone is acquitted because it's found that the proof does not establish the stringent criminal justice standard, you're just giving back the license without any further inquiry into whether they actually committed some act that might justify suspension, right? Well, I think that that reflects the scale of what we're talking about. So there are 1,000 to 2,000 suspensions after arrest every year. So I mean, for the agency, a perfect rule would require the agency to look under essentially the outcome of every criminal adjudication and make a determination whether that reflected an accurate final determination about that person's culpability rather than something else. But the administrative burdens of going through that for every case and trying to figure out why. I think you're in trouble when it's a question of protecting the public, but the cab driver should bear the burden of losing the income in the interim. That's something that you're prepared to do, is just make a suspension for these misdemeanors where anyone familiar with the criminal justice system in the city of New York will tell you that virtually all of these misdemeanor things are going to wash out in the process. There are going to be dismissals supposedly for speedy trial, but basically because the prosecutor is using that as the mechanism after deciding they're not going to pursue the case. Or they're adjourned in contemplation of dismissal and the case is dismissed in that way. All of these are what happen in misdemeanor land. There is not generally going to be an adjudication of guilt or innocence with respect to misdemeanor arrests in the city of New York. That's the real world that we're talking about. Nevertheless, people get their license suspended as a kind of automatic punishment for getting arrested. Even though the arrest may turn out to be two guys got into a barroom brawl and understandably, I'm not saying there's anything inappropriate about the police behavior, rather than try to sort it out on the spot, there's probably a cause to arrest both guys, they arrest everybody. And then it all says that was a way of keeping the peace. And later everybody says it's not even worth pursuing this as a criminal charge. These are the kinds of charges that people are losing their livelihood for four months. That's what's happening in the real world. And you're saying that's a rational thing for the city to do. I'm not talking about people arrested on probable cause that they committed felonies like murder or rape or aggravated assault or armed robbery or something. We're talking about all these misdemeanors, because after all, that's 75%. As your adversary pointed out, if you broke this down category by category, I'm willing to bet that it's not 75% at all for each category. For some of the categories, people get convicted and they lose their licenses. And for other categories, like you know, DWI or something. Under other of these categories, I'd bet that 99 or 100% of them never proceed. But nobody's looking into that. Nobody's taking that seriously as a burden on these drivers, right? It is not a perfect rule and it is a rule that puts the burden on the driver rather than on, that allocates the burden to the driver rather than to the public of the risk of danger. What's the burden on the, I mean, the burden on the driver is he can't, but he can't even under your argument, to the extent I understand it, correct me if I'm wrong, he can't or she can't introduce factual discussions about why charges under these, the charges notwithstanding his or her license should not be suspended. You're saying just the mere recitation of the charges is enough. Is enough for suspension pending the outcome of that criminal proceeding. So, and I think it is relevant. I'm just taking you through all of that. Yeah. But let me, let me ask you this. If we disagree with the city's position here, should we fashion a remedy or should we send it back to the district court with perhaps more explicit discussions than I managed to offer for our panel? Well, obviously if we're speaking in the situation where you're sending it back, I think that it would be appropriate to send it back to Judge Sullivan. We have, we would have to figure out what the scope of that would be. Well, we would have to figure out what the scope of that would be, I suggest. Right. I just, that there would be appropriate to have some other opportunity to, to, to resolve the questions about what procedural or substantive due process required. But I think that. To me, there was some direction to engage in an analysis of what's actually going on and then fix it. Right. Well, Judge Sullivan did undertake a, he resolved the question. Substantive due process in all of this. I'm sorry, Judge O. It seems to me the, the, the district court's decision analyzed this as well as what's going on doesn't shock the conscience. I didn't, I didn't, I don't quite see shock the conscience language in Matthews v. Eldredge. No, Your Honor. What Judge Sullivan did was first make the determination as to what the rule was, then ask the question whether there's a meaningful opportunity for a driver to be heard on the And that's the, the procedural due process analysis. And he concluded, and I don't think there's a dispute that as to the facts that are relevant under this standard, the, the driver does have an opportunity to be heard. The court then, recognizing that what plaintiffs really are saying is that the standard is faulty as a substantive matter, went on to consider whether the substantive due process justified it. So the court fulfilled the mandate here on the remand. And then even though plaintiffs had disclaimed any substantive due process claim, recognizing that the, the long trajectory of this case gave them an opportunity to, to make out that claim and concluded that this was a rational basis. So I want to get back to that, if I could, to your question about the rational basis. You know, the statistic is 75% of drivers get their license reinstated. We think that's actually higher than the record supports, but that's the finding. That means that in a given year, 25% don't. And that, you know, when we're talking about 1 to 2,000 drivers suspended, that can be as much as 500 licenses that aren't reinstated at the end of the criminal proceeding. And if TLC had perfect information at the outset as to who would be the 1,500 who got reinstated, who the 500 were that don't, then it would have, it could have a different rule, but it doesn't. And I'm a little confused. I understood, and correct me if I'm wrong, that the Commission admitted that while 6,000, in 2012 and 2016, only 15 licenses were revoked during the same period, is that not? That's true, but the other piece of that picture is that 2,400 licenses, the TLC had no further information about. No, the driver had never come back to seek reinstatement, and there'd been, and the suspicion is that a substantial number of those ended in conviction, and the driver just decided not to come back and keep reporting the information to TLC. So there's a large number where it was not, didn't end in revocation, but also didn't end in reinstatement. So and the, if, as you say, Judge Lynch, that many of these misdemeanor cases end with pleading down to a violation, then that actually is, in a way, a useful heuristic for figuring out dangerousness, because, you know, if it ends up in a non-criminal violation or something that's not a, that TLC doesn't recognize as a danger, the license is reinstated. If the person ends up not being able to plead down to something like that, and ends up either pleading guilty to something that's still on the list or going to trial and losing, it suggests that there was something more to the seriousness to the charges. So you've sort of raised a hypothetical about the barroom fight. Certainly people do get arrested in those cases. Sometimes a prosecutor will decline to prosecute at the point of writing out the criminal complaint. If it doesn't look like the facts sustain it, or will plead it out further down the line if it looks like it was, it was not serious. And in that, there's an immediate reinstatement of the license. So there's no, it's not a, the agency isn't looking to punish anyone for committing, being arrested or committing a crime. The point is that while there's made a, the TLC has made a judgment that while the, a criminal charge is pending that implicates public safety, it's in the best interest of the passengers and the public generally to make sure that that person isn't on the road. And it's not a, it's not a perfect rule, but given the scale of the problem and the lack of information the agency has, it's a rational choice to make that. What objection would you have then? I understand the concern that I think we would all share that we don't want people, we don't want cab drivers who are dangerous. What objection would you have for the introduction of even limited factual discussion by those who are, by those cab drivers as to why their license should not be suspended? Part of a mini trial, there must be ways, we know that from at least from one of the professions, this kind of a particularized discussion does go on. And we know that in this litigation that we understood that it did go on. So why can't it go on in, in, in, in, in, in, in recognized as such? Well, I would like to answer that in two ways, Chief Judge Kassman. So the first is, the question here is whether it, the constitution requires that. And for the reasons that I've been suggesting, it doesn't. It's a rational choice to, to, to design a system in the way that TLC has done it. The other response I'm to make is that when you open the door to that kind of more individualized inquiry, I mean, you can see it in some of the ALJ decisions that are in the record. You noted earlier that Judge Sullivan found that some of the hearings do go, did go into a more individualized determination than the rule contemplates that, you know, the, the adjudication of the hearings is transferred in 2006 over to Oath, which is an independent city agency. And the judges there have their own view as to what the appropriate questions should be in those hearings. And so you see the, the commissioner deny or rejecting recommendations to lift suspensions because the commissioner has a different view of the rule, as much narrower than some of the ALJs. And some of them actually cite this court's decision in NEBE as directing that they consider all the evidence. So they're, they're operating in a different sort of framework than the, than the agency. But you see in some of those decisions what happens when you're trying to make an individualized determination, particularly while a criminal case is pending. You know, one case, the body case, which is in the record, driver, the driver came in. He, I think he was the only witness, testified about a, an assault charge. He got into a fight with another taxi driver. The ALJ essentially believed his side of the story and decided that he wasn't dangerous and, you know, listened to his account of his health problems and his financial situation. And it's not clear that that's necessarily an accurate adjudication of his individual dangerousness because we've only had limited inquiry, limited evidence as to what that is. So . . . We only have limited evidence as to what anything is out there. Right. But there's, I'm sorry to interrupt. No, go ahead. But there's a parallel criminal case going on where the complaining witness will testify,  And so . . . No, you don't. As Judge Lynch had said earlier, you, you get a determination, let's say it's not guilty. All that means, I tell myself when I lost cases as a prosecutor is, there was insufficient evidence to satisfy the jury beyond a reasonable doubt that the person had done what they, what they had done. There was no doubt in my mind ever that that person hadn't done the crime. The question was whether I could prove it. Right. And going back to Judge Lynch's point, it seems to me that if the commission is really worried about this, they are not requiring proof beyond a reasonable doubt in these cases. They're requiring only by a preponderance as I understand it. Is that correct? Well, no, the agency is, is deferring to the outcome of the criminal case. So the standard there would be beyond a reasonable doubt. And the agency then doesn't go and do its own independent determination about individual dangerousness. It defers both probes. In favor of the driver and in favor of... So it's deferring it to be, to the, to the criminal process beyond a reasonable doubt. Why the heck aren't they applying a beyond a reasonable doubt standard at the front end of this and not suspending these licenses? Because they're not making any determination about dangerous, individualized dangerousness in the administrative hearing. They are making a determination about dangerousness. They're making a determination that is focused entirely on whether there's a pending charge and whether that charge has, implicates public safety in itself. And so there, you know, this is not a case where there's a presumption of, of guilt or where the agency is making any determination of criminal liability at the outset. Many, there are many cases where courts have recognized that when a, when a deprivation turns on a specific fact, readily available fact in the world, then it's appropriate for the hearing to be focused on that fact alone. I'd point for one example to this. When, when a cab driver is charged with endangering the welfare of a child because she left a child, her child in a stroller outside a store when she went into the store to buy something. And that's what it says in the complaint. There's no reasonable basis for allowing a hearing at which somebody points to say that that's the charge and you're saying that I'm a danger to my cab driver, my, my taxi cab passengers because of that. And here I've got this unblemished record with, for many years of both driving and life of no criminal charges, no criminal problems. There's no room there for anything but a finding based on the nature of the elements of the offense that the person is dangerous. I think that even though the criminal justice system isn't perfect, obviously it's rational for an agency to say if those are the circumstances leading to that charge, then that person's going to end up pleading down this to a, to a lesser offense. You can look at that and say, that's what's likely to happen. And indeed, even if it doesn't happen, I'd sort of wonder what the justice of that is. Still, we're going to suspend the license because it's a charge of endangering the welfare of a child when we put it on the list. That's how the rule operates. I mean, I think my adversary has suggested that what they're, that they're looking for is a complete sort of holistic determination of dangerousness. Yeah, what they're looking for and what they may or may not get are different things. Right. But I'm trying to figure out whether what you do is, is, is reasonable. But I, excuse me, I think when Judge Hall asked a question, you were kind of winding up with that case of the, the fellow where the ALJ recommended that he keep his license. Were you going to get to the punchline that he was eventually convicted of a crime and lost his license? No, he, I, to my knowledge, that's not the case. But my point is that as a means of, of sifting through. How much of an anecdote then is it? I mean, it, you know, well, the, the ALJ, the, the agency was confronted with a recommendation saying this person is not dangerous because he came in, testified, I found him credible. And as a basis to decide whether that person should go back into a cab while the charges are pending and someone else shouldn't, making that determination on a very incomplete picture is problematic. So, it may turn out later, and again, we don't know how those cases turn out when we're at the beginning of them, of what's, how they're going to turn out. But in terms of setting a rule that you need to, to, to make a determination of dangerousness where you're not going to have complete information, it's, it, there's a reason why the agency would choose to make it narrower. But the other point on the criminal complaint, nobody, none of these plaintiffs has suggested that they wanted to bring in a criminal complaint. They haven't identified anyone else who tried to do it. That's part of why Judge Sullivan found that it wasn't part of the standard, is it's never come up. And to the witness's knowledge, it's never been something that, that's been presented. I think it's not surprising that very few drivers would find it useful to bring in an accusatory instrument. I mean, the, the plaintiffs are, criminal complaints are in the record, and if you look at them, it doesn't cast the charges in any better light for them. So, I think just, if the question is whether allowing that limited inquiry into the nature of the charges, excluding that is rational, I think that the time has shown that that's not something that, excluding that isn't something that's likely to make a difference in the outcome of the cases. By the way, does the record show how many hearings there are every year today? It does. I don't remember the exact number off the top of my head. I know that it's... Is it, I had some impression that there are very few because the union tells people don't bother because you're always going to lose. Right. That, that's, I think that's correct. I don't really know what would happen if there were real hearings. Well, there would be, there would likely be many more. And again, that's something, well, that is something you have to consider when you have thousands of suspensions a year. But also, you know, the, the other thing is that, that, that to the sort of just sort of the, the, the, to the point of the hearings, I think, you know, the, the agency provides a significant amount of process independent of the hearings to make sure that there's no errors being made. And so the, even as to the specific, the narrow facts that are being considered, you know, the, the, the fact that there are very few hearings suggests, I think, that likely the, the agency is weeding out errors, situations where the charges have been reduced or where we have a case of mistaken identity even before we would get to be the need for a hearing. So it, it isn't a sign that, that there's no point in these hearings, but just that, that they're really a backstop to avoid, as one witness said, egregious errors, we got the wrong person. Look, looking at the, looking at, just for a moment, at the underlying city ordinance, the regulatory system, as I understand it, operates pursuant to various laws. And their latest, one of the later city ordinances, New York City, New York Code, section 1915, section 19-512.1, note one, says that, it seems to indicate that the ordinance was passed to reduce the severity of some of the rules of the commission around discipline with respect to for hire vehicle drivers. So the purpose language in that ordinance, which you are familiar, says the council finds that certain of the rules promulgated within the past several months by the commission, such as those that modify the disciplinary measures that may be imposed against taxicab and for hire vehicle drivers, taxicab and for hire vehicle owners and taxicab medallion owners are onerous. And seems to suggest that the, that the purpose of the ordinance was, while recognizing the quality safety services for those who need these vehicles, that there also be a fair treatment of the industry, of an industry important to New York City, and that's in the language. And the need for fair treatment of an industry important to New York City. So why is it in some sense that these regulations, as you are interpreting them, is not consistent with what the law was trying to do? The law was trying to figure out a way to ensure the kind of safety that is needed, while at the same time reducing the burdens on taxicab drivers in disciplinary proceedings as to how those proceedings would be undertaken. So right. So I haven't focused on that statement of purpose, so I can't tell you for sure whether it's addressed to the suspension rule we're talking about here, but it could be a question of state law, whether the rule the TLC has applied and adopted is consistent with what the city council now believes is the appropriate allocation of burdens. That's a state law question. It's not presented in this case. And so I think the answer to that is that there will be, there could be a place in time to adjudicate whether the city council has suggested a different rule. I can't say, as I said, whether that's what their intent was now standing here, but it's beyond the boundaries of this case. There's no state law claim currently being presented to this court. And the rule of the TLC is clear. I would say, yeah, I was citing to a New York City Code law, not to a state law. Well, right. I mean, the New York City Code, right, it's the local statute. I meant state law generally meaning it could be resolved in a claim under New York law under Article 78 proceeding to question the, whether those two are consistent, but that's not presented here. The last question for me anyway, is the, I take it you agree with Mr. Goldberg that there's no difference between the Nibi and Stallworth cases, that it matters not that the rule has been amended several times and that the most recent version under which the Stallworth plaintiffs had their licenses suspended has this both if true language and the list of offenses and essentially provide, it's really, not essentially, it literally provides that as a matter of law, suspensions will happen when people are arrested for these crimes. That doesn't make any difference to this. It's been really the same all the way through in your view as well. Yes. As to, except that's the notice issue where we, where Judge Sullivan made a distinction, then yes, the analysis should be the same as to both. And I don't know to what extent it's relevant to your questions, but at the outset of speaking to my adversary, you asked about the class claims. I hadn't given a lot of thought to sort of the status of that, but I will note that at page 47 of the Nibi special appendix, Judge Sullivan notes that the plaintiffs have voluntarily withdrawn all other claims in the case, which is state claims, but also to the extent that they're asserting there were still class allegations. Those claims too were voluntarily dismissed in the interest of getting to a final judgment. So this is a case about three plaintiffs in Nibi. I just have one last question and you've been very patient with our questions. If you could help me understand this, I'm having trouble understanding how the commission standard does not depend, does not rely on an assumption of guilt. It requires, right, that the commission assume that the charges against the driver are true. And even if it's, you can say it's temporary and so on, but the way the regulatory scheme operates as you are interpreting it, as I understand it, is that we have to assume that the charges are true. And then doesn't that come very close to assuming guilt? No, it doesn't, Chief Judge Kessler. So the standard turns on a fact in the world. Are there charges pending against this driver? And a determination that those charges by their nature are something that implicates public safety. There's no determination about the guilt of the driver. There's no presumption of guilt of the driver. It can look similar, but it is a distinction that matters in the law between a standard that applies to, is triggered where a suspension or deprivation is triggered by a fact, an external independently verifiable fact, and one where there is a, the proceeding itself is premised on a determination of liability or guilt and setting a presumption that can be rebutted. This proceeding never turns on the actual truth of the allegations. It turns on the pendency of the criminal charges. So, um, But you're understood categorically rather than as specifically, whatever the particular facts of this person's case are, it's the elements of the offense. That's right. It's sort of a categorical approach in making that determination of the nexus. So there's never a point where it's turning on the assessment of the likelihood that that person is guilty of the charges. Is it an oversimplification of your position to say that it's something like, if it would be fair and appropriate and not a violation of the constitution to revoke someone's license if they are convicted beyond a reasonable doubt of something, then it is also not a violation to say that where a judicial officer has decided that there is at least probable cause to believe that they committed that offense, the license should be suspended pending the trial. And that's, that's not really presuming guilt. That's just saying, given that the, uh, or on the assumption that the offense is one that would justify, uh, if found to be true termination of a license, then probable cause is good enough to warrant a suspension. I think that's a fair statement of our position, Your Honor. And if the court has no further questions, thank you very much. Your Honor, as tempted as I am to waive further argument, I'd like to make, uh, four, I hope, simple points. First, actually maybe five, Judge Lynch just asked about a judicial officer. In the misdemeanor cases, there is no judicial officer making a determination of probable cause. The only determination is generally made by a police officer based on a one-sided accounting of the events. Isn't the, isn't it required that the person be presented before a judicial officer after being arrested for a misdemeanor? Eventually, they are, but... And doesn't that officer have to decide whether the complaint, that judicial officer, then have to decide whether the, uh, complaint, uh, establishes probable cause to believe that otherwise would be dismissed, right? Two points. One is these suspensions are based on an arrest before there's any presentation to a judicial officer. Often, it's a direct, direct desk appearance ticket, and therefore, there is no presentation to the judicial officer for, it could be a couple months after the arrest. Secondly, I believe on a misdemeanor, they do not need to make that determination. I think this Court said that, made that point clear in Crimstock. Um, I, I could be wrong about that, but I think this point made it clear in Crimstock that there is no judicial determination of probable cause on a misdemeanor. The second point I'd like to make is, goes to, um, what Judge Hall asked, if the Court should direct a judgment. We definitely believe that the record is crystal clear here, and it's more than adequate for this Court to direct a judgment for plaintiffs. Third, on the class cert point, which, uh, Judge, you asked about Judge Lynch, we did move for class certification in NEBE. It was denied when the case was dismissed on that basis. We also asked to move for class certification in Stallworth, and the Judge, uh, Judge Sullivan said, you cannot make that motion because I'm expecting a motion to dismiss, which I expect to grant. So we did make it a class certification motion in both, or attempt two and one, and actually did it in the other. Um. The argument that Mr. Platton made that in NEBE, all other claims were withdrawn, uh, in order to reach a final judgment, that doesn't include the class certification. No, we, we don't, we didn't withdraw the core federal claims on which we would have made the class certification motion had we been able to do that. So when you, I'm just curious, when you say the record is clear enough to present a, to, to allow us to, uh, rule that there should be a judgment in favor of the plaintiffs, a judgment, what kind of judgment, uh, that we, we can't impose damages, uh, and there is damages already for the notice violation that the district court had. But if we say there's a bigger violation, there's not a judgment then, is there? A judgment as to liability. Judgment as to liability. Well, it is a partial judgment. And, and as far as the remedy, uh, what kind of here, if there's still injunctive relief or there's still going to be, uh, class certification, there's quite a lot to be done, isn't there, after. Could be. A hypothetical vacatur of the decision below. It might be a lot to be done. There might be a settlement at that point. It's hard to say. But nevertheless, I think we were entitled to judgment on liability. I'd also like to address the 75% statistic. First of all, as, um, I believe Judge Cashman point out, pointed out, there's a letter in response to a FOIA request, not in either case, but nevertheless, where the city said there were only 15 convictions and revocations in a four, in a five-year period out of more than 6,000 suspensions. And it, incidentally, nine of the 15 were DWAI offenses. So the, and also that, and Judge, sorry, that Mr. Frazier, in the MeV trial, testified that there were only two convictions for crimes of violence of taxi drivers in a four-year period. And in either case, did they necessarily involve a passenger. No one knew what they involved. And as to the uncertainty about the statistic, whether it's 1% or less than 1% or 75%, Mr. Platten said that there are certain cases where the city doesn't know what happened to the criminal case. But even if you give them the half, which would be an extremely generous assumption of the unknown cases resulted in a conviction, it would still be 85% or so, or 84%, five out of six, would result in no criminal disposition. The only... Let me ask you this, following up on Judge Lynch and Judge Hall's questions. In terms of a practical remedy, a process, going through the briefs, now having heard the arguments, you've heard the arguments, what would you envision, in practical terms, a process looking like? Well, I think we have a good guidepost in the jury verdict form factors. I think what they should do is, before they suspend anyone, they should probably make a couple of phone calls, certainly to the driver, ask him what happened, or maybe call him in for an interview, not something less formal than a hearing, but ask him what happened. They might want to call the arresting officer, too. They have the arrest notice form says the precinct, it doesn't give the officer's name, but I don't think it would be very difficult to make that call, and ask the officer what happened. And then maybe decide not to suspend at all. But then once you get to the suspension hearing, you should consider... I think every factor in the jury verdict form is something that could be easily considered at a suspension hearing without having a mini-trial, without requiring the testimony of a police officer, without requiring a testimony of a complainant. All those factors could be easily taken into account. Many are, you know, known at that time. I thought you get back to the city's position that, it seems to me, but correct me if I'm misunderstanding you, that then you essentially get a one-witness hearing, presumably the driver there saying this is what happened. Well, right, it might be a one-witness hearing, but they could... A lot of things have nothing to do with what happened. Was there a DAT that has nothing to do with what happened? Was there a release on the driver's own recognizance? Does the driver have a prior criminal record? Does the driver have a good work record? All of these things are known to the TLC, and would not require really any testimony, but these are factors that could easily be considered. The only thing that you might have a one-witness hearing on is what happened that led to the arrest. And in the Stallworth hearing, for example, the judge credited his testimony, which in that case had to be backed by documentary evidence of his phone records, and said, I think this guy gave a credible defense to the criminal charge, as well as everything else, and therefore lifted the suspension, or recommended the lifting of the suspension. Of course, it was not actually lifted. Suppose we entered a ruling that said, in a case like that, the commissioner has to consider all this evidence. And the commissioner says, well, I've considered all this evidence, but really, I mean, he's accused of doing X, Y, Z, maybe not the elements categorically. We even looked at the complaint. And boy, if he did that, I don't see how he could be a safe person to be a cab driver, notwithstanding that the officer gave him a DAT. Then what? Well, if the officer gave him a DAT, then the officer has made something of a judgment himself. He made a judgment that it would be safe to leave him on the street, which is different than saying it's safe to let him be a cab driver. Right. I'm trying to figure out, you know, what's the real teeth here? We can say have a hearing, but if at the end of the day they still wind up suspending 95 percent, 80 percent, 70 percent of the people based on the argument, I'm just not persuaded that all these factors outweigh the charge in the complaint. Two answers to that. One is we're not saying they can't assess as a factor the fact of the arrest and the charges. And in certain cases, that might be overwhelming. If the driver is accused of murdering a passenger, that's an easy one. If the driver is accused of raping a passenger. If the driver is accused of murdering anyone. Those are easy cases. So we're not saying they can't assess that as a factor, the charges, the fact of the arrest, but you have to weigh the other factors. And sometimes the suspension would continue, and sometimes it wouldn't. Ideally, they would let the judge decide, not the chair. And if the judge decided, first of all, we have a much faster hearing, and also we have a less biased hearing. And that goes to the last point I did want to make, and that goes to the language of the rule and the workings of the rule. First of all, as you pointed out several times, Judge Lynch, the rule in every iteration has required either emergency action being required or that there be a direct and substantial threat to public safety. That's the beginning of the rule. That's Section A. But then you get to Section C or D, depending on which iteration of the rule. And in every case it says the issue of the hearing, this is except for the first rule which had no hearing, the issue of the hearing is whether the driver presents a direct and substantial threat to public safety. So the safety element and the threat element is in the rule, not just at the beginning and at the end. Well, but the 2014 rule, I think, can be read very easily as there is a general summary suspension rule, and then there's a separate and distinct specific summary suspension rule for criminal charges that makes no reference to the emergency, et cetera, other than to say what it says in the rule itself, that the charges, if true, would demonstrate that licensure would constitute a direct and substantial threat to public health or safety. Right. The last version of the rule does not make a reference back to Subsection 90. The other versions of the rule do do that. But even if it doesn't make a reference, I think you can see Part 1 of the rule should – the rest of the rule should be read with Part 1 in mind. But even if you don't, Section D.3 says the continuation of the license would pose a direct and substantial threat to public health or safety. Right. Whether the charges underlying the arrest, if true, demonstrate, which Judge Sullivan read as meaning we look to the charges, not to other extraneous – Right. Well, that's another argument the city never made in the first case. We would argue that argument – They couldn't have made it in the first case because this regulation didn't exist until 2014. Right. But they had changed the rule, and they could have referenced the new rule, which was – There's a new rule – No, this one was not 2014. But as of 2006, they did have a rule which allowed for suspensions on arrest. And then in 2011, they amended it. And then even during – actually, as it happened during the trial, they amended it again. So they could have brought it up to Judge Sullivan. And they could have brought it up to this court in 2000 – I think the argument was in 2010, because as of 2006, they had a rule. But every version of that rule requires – And I know Judge Sullivan said it's the charges that you emphasized. I don't think that's a fair reading of the rule. But even if – but certainly it's not an argument the city ever made to this court that led to the 2011 decision. And it's directly contrary to the argument they made at the trial. And before the trial, when Judge Sullivan presented them with the jury verdict form, they said, first, we don't look at any of those. And then they said, oh, never mind, we do. It's sort of funny. There's this kind of informal class action thing going on here, because as I read it, we have one case that involves three people who were charged before 2006. That shows you how long this case has wound its way through the courts. Under a rule that, as I read it, has nothing to do with automatic suspension for criminal charges. And then we have a separate case filed in 2017 that has three people who were charged post-2014, under the current rule, that specifically says you can be suspended for charges. So I don't know how – but now everyone's telling us that yes, but we always assumed it was a class action. The Taxi Drivers Association is a plaintiff. It's really all the same all the way through. And I guess both sides think it is the same all the way through, so maybe you're right. Well, the practice is certainly the same all the way through. The rule, the language of the rule has changed. And you're also right that everyone has kind of assumed that this is a class suit. That's how it was litigated on appeal and at the trial. Looking at the history of the rule, it was in December of 2006. Right. The commission promulgated a version of the rule which says, based upon an arrest on criminal charges, it authorized suspension based upon an arrest on criminal charges that the chairperson determines is relevant to the license's qualifications for continued licensure and say that post-deprivation hearing, the issue, and I'm quoting, shall be whether the charges underlying the licensee's arrest, if true, demonstrate that the licensee's continued licensure during the pendency of the criminal charges would pose a threat to the health or safety of the public. And then after the 2011 amendment, the rule stated that the chairperson may summarily suspend a license based upon an arrest on criminal charges if the chairperson believes that the charges, if true, would demonstrate that continued licensure would constitute a direct and substantial threat to public health or safety. So at least since 2006, there's been some version of the charges, if true, language. Right. Well, but every version of the rule, including the current version, links the threat to the licensure, not to the charge. I would say the idea of linking it to the charge is just grammatically nonsensical because a charge cannot threaten anyone. A taxi driver can threaten someone. A gunman can threaten someone. A bomb can threaten someone. A charge cannot threaten anyone. And every version of the rule says, is the licensure a threat? Meaning, is the driver a threat? And it has to be that way based on the code section, the ordinance that you just read, because that also speaks of the driver being a threat. It has nothing to do with arrests. And Judge Sullivan says the grounds or the justification for every version of the rule is the code section, 19.512.1, which has nothing to do with arrests and never has, but does say the driver needs to be a threat. This is a state law argument that the regulation is unauthorized. No, well, I'm not making that argument. But what you're saying is it all goes back to the ordinance, and if the regulation is inconsistent with the ordinance, that's not a constitutional matter, or is it? It's not. But that's not our argument. If you're asking me do I think the regulation is unauthorized, I would agree. But that's not our argument here. That was one of the arguments we had to drop in order to make this appeal. But my point is, as to the reading of the rule, which the court seems concerned with and Judge Sullivan was concerned with, the only way to read that rule, or the best way to read it, is not to say is the charge a threat. That's grammatically and logically nonsensical. It's whether the driver is a threat, specifically his licensure is a threat during the pendency of the criminal case. Because it's not a question of is he a threat going forward at any time. It's only during that one small period. Which is fairly long. Sorry. Which does turn out to be fairly long, at least. On average it's 136 days, and we now know that, which means in some cases it's probably a lot longer.  That's the nature of an average. But it always goes to the driver and his licensure being a threat. And I submit that's the only way the rule really can be read. Not only based on its own language, but based on section 9512, based on the city's representations to this court, and its trial testimony in the district court. Thank you. Thank you. Thank you all for your helpful arguments in this challenging case. And we have your grace under considerable pressure on both sides. Much appreciated.